LENA BENDER, EXECUTRIX ET AL. v. R. E. BROOKS ET AL.

Decided June 6, 1910.

**1.—Limitation—Evidence—Case Followed.**

On the issues of the sufficiency of the evidence to support a plea of five years' limitation, the case of Bender v. Brooks, 103 Texas, 329, followed.

**2.—Estoppel—Disclaimer of Title.**

The issue being one of estoppel in pais, it is not essential to prove that the declarations of a supposed owner to the effect that he claimed no right, title or interest in the land in controversy, were made directly to a prospective purchaser or his agent; it is sufficient if it appears that the declarant intended or ought reasonably to have expected that his declaration would probably reach such persons in general who contemplated buying the land from another.

**3.—Same—Knowledge—Evidence.**

Testimony which might otherwise be subject to the objection that it was hearsay might be admissible to show that a party had knowledge of a material fact.

**4.—Same—Nonaction—Charge.**

Acts, conduct or representations of a person which do not influence others to act upon them do not create an estoppel against him. Where it appeared from the testimony that a party was solely induced to buy a tract of land from one person by the declaration of another that he, the latter, did not claim and had no title to the same, it was error for the court to submit to the

jury the issue of estoppel by acts or nonaction, there being no evidence raising that issue.

### 5.—Same—Mistake of Fact—Charge.

A person may be estopped by his declarations although the same are made under a mistake of fact. Charge considered and approved.

### 6.—Same—Knowlede of Fact—Rule.

The rule that an actual knowledge of the truth is indispensible in order to create an estoppel is not universal. It applies in full force only in cases where the conduct creating the estoppel consists of silence or acquiescence. It does not apply where the party sought to be estopped, although ignorant or mistaken as to the real facts, was in such position that he ought to have known them, so that knowledge will be imputed to him. In such case ignorance or mistake will not prevent an estoppel. Nor does the rule apply to a party who has not simply acquiesced but whose affirmative acts and words have thus misled another; nor does it apply in cases of mere acquiescence where the ignorance of the real facts was occasioned by culpable negligence.

### 7.—Trespass to Try Title—Plea of Not Guilty Without Evidence of Title— Charge.

Where a defendant in trespass to try title pleads not guilty but introduces no evidence of title, the court should instruct the jury to find for the plaintiff as against him provided the plaintiff showed title in himself. In the absence of a disclaimer it is error for the court to instruct the jury that said defendant did not claim any interest in the land in controversy.

### 8.—Practice—Submission of Issue.

Where the evidence raises an issue, but is not such as to compel a finding one way or the other, it is proper for the court to submit the issue to the jury.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Carlton & Townes, Hogg, Gill & Jones, Frank S. Burke* and *John Hamman,* for appellants.

*Fisher, Sears & Campbell, W. G. Sears, Presley K. Ewing, Hutcheson, Campbell & Hutcheson, Andrews, Ball & Streetman, L. B. Moody,* and *Greer, Minor & Miller,* for appellees.

McMEANS, ASSOCIATE JUSTICE.—This is an action of trespass to try title, originally brought by C. Bender, Sr., against R. E. Brooks and others to recover a tract of ten acres of land out of the Robert Dunman survey in Harris County, and for damages on account of the taking from said land by the defendants of a great quantity of petroleum oil. C. Bender, Sr., died pending the suit, and his surviving wife, Lena Bender, one of the appellants, qualified as the executrix of his will, and made herself a party to the action.

E. F. Simms intervened, claiming to have purchased the title to the land sued for from C. Bender, Sr., as well as the cause of action for taking the oil. Mrs. Lena Bender thereafter, by supplemental petition, admitted the truth of the allegations of the petition of the intervener, Simms, and prayed for a recovery against the defendants in his behalf.

In addition to the ordinary allegations in trespass to try title, Mrs. Bender and Simms set up and anticipated a lien against the land growing out of a foreclosure sale, under which sale defendants were claiming title, and made a tender of the money necessary to pay off the debt on which the foreclosure was predicated.

The case was tried before a jury and the court instructed them that on the face of the record the plaintiff and intervener were entitled to recovery unless they should find for the defendants on some of the three defenses insisted on by the defendants, the three defenses being:

1. That C. Bender, in his lifetime, became estopped to set up title to the ten acre tract in question as against the defendant R. E. Brooks and those holding under him.

2. That the deed from Milledge & Calhoun to C. Bender, Sr., under which plaintiffs claim, was made in trust for the purpose of securing the payment of debts, and that the trust had been accomplished; and

3. That as to the ten acres in controversy plaintiffs' right of recovery was barred by the statute of limitation of five years.

The jury returned a verdict in favor of defendants, reciting that their verdict was based on limitation of five years. On this verdict a judgment was accordingly entered and from which plaintiffs have appealed.

By their fifth assignment of error appellants assail the verdict and the judgment rendered thereon upon the ground that the evidence is wholly insufficient to sustain a finding for defendants on the issue of limitation.

The Supreme Court, in answer to a question certified to it by this court, held that the evidence did not present the issue of five years limitation as to any of the land in controversy outside of the Rankin-Bush inclosure. See Bender et al. v. Brooks et al., 103 Texas, 329, for the facts upon which the question and answer are predicated. For the reasons stated in the opinion of the Supreme Court the assignment is sustained. This necessitates a reversal of the judgment of lower court. In view of another trial we have been requested by appellants, and we think it proper, to pass upon other questions raised by assignments, which are likely to again arise.

In view of the holding of the Supreme Court above referred to, appellant's assignments of error from one to four and from six to twenty, complaining of the admission of evidence and giving and refusing to give charges upon the issue of limitation, become immaterial.

The history of the title of the Robert Dunman survey showing the manner in which C. L. Bender and J. T. Mason acquired their claims of title, is fully set out in Mason v. Bender, 97 S. W., 715, and for the sake of brevity will be omitted here. We will add, however, that the appellees deraign title through a sale of the ten acres in controversy by Mason, through his agent E. L. Dennis, to Brooks, and the intervener, Simms, through a purchase from C. Bender, Sr.

On the trial the appellees' witness, McWilliams, was permitted over objections of appellants to testify as follows:

"As I stated in my last answer, I sold a ten-acre tract of land out of the Robert Dunman one-third league to R. E. Brooks along about the 1st of October. I closed said sale up after having shown the land to Judge Brooks, he making to me the first earnest payment, and I gave him a receipt for the same in the name of the firm of L. Bryan & Co. A short time afterwards I sold to C. W. Harral and W. W. Harral, of the firm of Harral & Harral, another ten acres of land adjoining the one north that I had sold to Judge Brooks.

"When I reported the sale of the ten acres made to R. E. Brooks to Mr. E. L. Dennis, and requested that he furnish Judge Brooks with an abstract covering the title, he stated to me that there was a slight cloud on the title, and that in order to clear it up a quitclaim deed should be procured from C. Bender, Sr., & Sons. At or about said time Mr. Dennis gave to me a quitclaim deed covering about 663 acres out of the said Robert Dunman one-third league, and requested that I see Mr. Bender and secure the execution of said quitclaim deed. I at once went to the office of Mr. C. Bender, Sr. & Sons, in Houston, Texas. I am not now clear whether I met Mr. Bender on my first visit to the office, but when I did meet him, which was about this time, I explained the request made by Mr. Dennis that there was some cloud upon the title to the J. T. Mason 663 acres, and that Mr. Dennis desired a quitclaim deed from him which would clear the title. Mr. Bender stated to me at the time that he had no claim upon the land; that at one time, some years previous, they did have some claim or lien, but that same had been paid off and that they had received their money in full. I replied to him that it did not appear so of record, and that in order to clear the title of any cloud was the reason that Mr. Dennis desired the quitclaim, and that it was the same cloud that had shortly been cleared from the land adjacent to this owned by Mr. J. B. Cherry, and to whom Mr. Bender, or C. Bender & Sons, had given a quitclaim. Mr. Bender then said to me that he did not wish to sign any instrument until he had consulted with Mr. George Hermann, as he and Mr. Hermann had an agreement not to sign any papers or other instruments affecting lands in that locality until they should consult one another. I then left, returning to the office of L. Bryan & Co., repeated my conversation with Mr. Bender, and that it would be necessary to find and secure Mr. George Hermann's consent before Mr. Bender would execute the quitclaim deed. I endeavored to find Mr. George Hermann during the next day or two but was unable to do so. Mrs. Bettie Bryan subsequently informed me that she had a conversation with Mr. Hermann, and he stated to her that he had no claim whatever in the land in controversy, nor any objection to Mr. Bender's signing the release or quitclaim deed. I again returned to Mr. Bender's office and repeated this fact to him. At this time Mr. Bender, Sr., said that he would talk to his son, who at that time was looking after his business at Humble, Texas; that he would go up the following day and that if his son made no objection they would execute the deed. I waited for two or three days, and again went to Mr. Bender's office and had another conversation with him. He stated to me that at the time he had been unwell and unable to visit Humble to see his son. I then proposed to go up to Humble on the following morning

and have Mr. Bender, Jr., come down so I could have the matter cleared up. On the following morning I went to Humble and met Mr. Bender, Jr., and explained the situation fully to him. Mr. Bender treated me very courteously; stated to me just what his father had first stated."

"As I stated in my last answer, I visited Mr. C. Bender, Sr., early in October, 1904, in order to procure a quitclaim deed, not to the land that I had sold to R. E. Brooks and Harral & Harral, but the whole tract of about 663 acres, owned by J. T. Mason, and out of which the two ten-acre tracts above described had been taken. Shortly after my visit to Mr. Bender, Jr., at Humble, Texas, as related in my last answer, he came to Houston and I met him and his father in their office in said city. The same question was brought up and talked over in relation to the quitclaim deed, as previously stated. They both stated at this time, as they had several times previously stated to me, that they had no claim or lien on the land in question; that they had been paid in full years before, and made no objection whatever to executing the release or quitclaim deed, so that it would not complicate their affairs in any way. At or about this time they requested an abstract of title so that they might submit same and the quitclaim deed to their attorney, Judge Burke, for examination, and stated the matter would be attended to very shortly, and a quitclaim deed executed."

Appellant objected to that part of witness' testimony in which he was permitted to state that Bender told him he had no claim upon the land; that at one time he did have some claim or lien upon it but that the same had been paid off and that he had received his money in full, on the ground that the testimony was inadmissible because it was shown that the statements were not made to Brooks or any other party to the suit, and the witness had not been shown to be the agent of Brooks. The admission of this testimony is made the basis of appellant's twenty-first and twenty-third assignments of error.

In explanation of the relation of the parties it may be stated that it was shown that the land in controversy was sold to Brooks as the land of Mason. Mrs. Bryan was a land agent and had this land for sale under some kind of an arrangement with Mason's agent, Dennis. McWilliams, the witness, was working under or with Mrs. Bryan, and the conversations dealt with in disposing of this and succeeding assignments of error were had during the progress of an effort to get Bender to sign a quitclaim deed.

It was shown by the testimony of Mrs. Bryan, with whom McWilliams was associated, that before Brooks purchased the land she had a conversation with Bender about it and pointed out to him upon a plat or map of the Dunman survey that tract of ten acres upon which Brooks held an option and the ten acres which the Harrals wished to purchase, and that before Brooks bought she had informed him of what Bender had said to her in regard to the land, that is, "that he had gotten his money out of that land long ago, and that he had no interest in it, and made no claim to it; that Bender said he would sign the release, but there was no necessity for his signing it as he had no interest in the land and laid no claim to it."

The effect of the testimony complained of is to show that Bender

knew that Mason or some one else was assuming to be the owner of the land and as such owner was attempting to sell it and to convey a perfect title; and that they consulted him in regard to the execution of the release or quitclaim to the end that the title so conveyed might be free from any cloud that his claim, real or apparent, would cast upon it. It was not essential to prove that the declarations were made directly to Brooks or his agent, if it appeared that Bender intended such declarations to reach persons in Brooks' claim, that is, persons who might contemplate purchasing from Mason, or if it appeared they were made under such circumstances that he ought reasonably to have expected that they would probably reach and be acted on by such intending purchasers. 2 Pomeroy Eq. Jur., sec. 807; Dickerson v. Colgrove, 100 U. S., 578; Gainesville Natl. Bank v. Bamberger, 77 Texas, 53; 14 Am. & Eng. Ency. of Law, pp. 149-150. We think the testimony was admissible as against the objections urged, and the assignments raising the point are overruled. This disposes also of appellant's twenty-fourth and twenty-fifth assignments which complain of the admission of Mrs. Bryan's testimony above referred to over similar objections offered by appellants, both of which are overruled.

The twenty-second assignment complains that the testimony of McWilliams, as to what Mrs. Bryan told him about Hermann, was hearsay. McWilliams had testified that Bender said that he did not wish to sign the quitclaim deed until he consulted Hermann. Mrs. Bryan testified that se went to see Hermann and that he was willing that Bender should execute the quitclaim. The testimony objected to was admissible to show that Bender had information of Hermann's consent. It was the fact of Bender's information, and not the truth or falsity of Mrs. Bryan's statement, that was the inquiry at this point, and what Mrs. Bryan said to McWilliams was admissible as an essential part of that information, so as to make it intelligible. If we are in error as to this, however, we think, in view of Mrs. Bryan's uncontradicted testimony, the error was harmless.

The twenty-sixth assignment is predicated upon the refusal of the court to give to the jury special charge No. 25, requested by appellants, to the effect that the evidence was not sufficient to warrant the jury in considering the question of estoppel. Without setting out the evidence introduced upon this issue, for to do so would extend this opinion beyond all reasonable bounds, we dispose of this assignment by saying that in our opinion the evidence was sufficient to raise the issue, and that the court correctly refused to give the charge.

The twenty-seventh assignment complains of subdivision one of paragraph III of the general charge, which reads as follows:

"If you believe from the evidence that C. Bender, Sr., by acts or nonaction and by actual expression, or either, so conducted himself that defendant, R. E. Brooks, while an intending purchaser from Mason, was naturally led to believe, and reasonably and justly to infer, that his, Bender's, apparent interest in the land had in some way ceased, and that he had and set up no claim or title thereto, and that in reliance thereon he, Brooks, closed his purchase of the ten-acre tract in controversy, and paid the consideration, and afterwards made extensive outlays for oil development thereon, then he, C. Bender, Sr.,

whether he actually owned or has an interest in such tract or not, was estopped in his lifetime, and the plaintiff and intervener are now estopped, to set up title to said land herein; and if you so find the facts, let your verdict be for the defendants."

In their first and second propositions under this assignment appellants urge that so much of the charge quoted which declares that Bender could be estopped by his acts alone, or by nonaction, was erroneous, as applied to the facts of the case, and was not warranted by the facts. We think the points are well taken and must be sustained. There was much testimony introduced as to Bender's nonassertion of title to the land for many years after the deed conveying it to him had been executed, the execution by him without consideration of releases or quitclaim deeds to other lands embraced in the same deed under which he acquired title; his failure to pay taxes; and other testimony of like import, introduced for the purpose of showing nonclaim of ownership or title by Bender. The declarations of Bender to Mrs. Bryan and McWilliams that he did not claim the land, with other statements in that connection, have been hereinbefore adverted to. Brooks expressly stated in his testimony that he would not have purchased but for the statements made by Bender to Mrs. Bryan and McWilliams. In view of this emphatic statement by him we think the court was not warranted in submitting to the jury, on the issue of estoppel, any acts or nonaction on the part of Bender not shown to have influenced Brooks, but should have limited the jury to a consideration of the statements made by Bender that Brooks relied and acted upon in making his purchase, and without which, according to his own testimony, he would not have bought; this, upon the well recognized principle that acts, conduct or representations of one person which do not influence others to act upon them do not create an estoppel against him.

The fourth proposition under this assignment is as follows: "Before Bender could have been estopped, his acts and language must have amounted to a representation or concealment of material facts; the condition of his title must have been known to him at the time of his acts and language, and it must also have been shown that what he said was said to Brooks, or with the reasonable expectation on the part of Bender that he, Brooks, would act on the statements so conveyed to him. These statements must have been fraudulently made on the part of Bender, or made with such reckless disregard as to the effect that they might produce as would in law amount to fraud."

This proposition is not correct as applied to the facts of the case, and is overruled. We think a substantially correct statement of the law bearing upon the facts is embodied in the fourteenth special charge given at the request of appellee, which is as follows:

"If you believe from the evidence that C. Bender, Sr., was applied to by real estate agents acting for Mason for a quitclaim to include the land in controversy, and was told that it was wanted to remove a cloud on the title in order to make intended sales of parts of the tract to purchasers, and that he then stated, in substance, that he had no claim upon or interest in said land, and that he once had a claim or lien on it, but that he had long ago gotten his money out of

it; and if you further believe from the evidence that C. Bender made these statements with the intent that they should be communicated to intending purchasers from Mason, or that he made them under such circumstances that he ought reasonably to have anticipated that they would be communicated to them and acted on by them, then if you further believe from the evidence that such statements were by such agents repeated to R. E. Brooks, and that he relied on the same, and was reasonably induced thereby to purchase from Mason the land in question, and pay the purchase price therefor, then let the verdict be for the defendants, although you may believe that Bender absolutely or conditionally declined to execute the quitclaim."

We think, however, that the concluding sentence of this charge, viz.: "Although you may believe that Bender absolutely or conditionally declined to execute the quitclaim," while abstractly correct when taken in connection with the entire special charge, should, in view of Brooks' testimony, have been omitted, because, as he testified, that had the statement been made to him that Bender had been given an abstract of the title which he had referred to his attorney, and that he was going to refer the matter to his attorney as to whether he had a claim on the land, he, Brooks, would not have purchased. "If I had known he was deliberating and wished to consult anybody outside of Hermann, even his own son, and had an abstract given him to look over, I would not have consummated the trade. . . . If there was going to be any question about his executing the release, although he had no claim to it, I would not have consummated it."

What we have said disposes of appellants' twenty-eighth assignment of error. The first proposition under the assignment is sustained, the others are overruled.

As we have before stated, we think special charge No. 14, given at the request of appellees, and above copied, contains a substantially correct statement of the law as applied to the facts of this case, subject to the qualification noted in passing on the fourth proposition under the twenty-seventh assignment, and appellants' twenty-ninth assignment, complaining of the action of the court in giving it to the jury, is overruled.

The thirtieth assignment complains of the action of the court in giving special charge "A" at the request of defendants. The charge is as follows: "In passing on the issues of estoppel, submitted in the general charge, you are further instructed: If material statements are positively made by one as of knowledge concerning an absence of interest or claim in himself to land, and if they reach a person, or one of a class of persons, for whom intended, or to whom the person making them, if made, ought reasonably to have expected they would probably be repeated, and if such person whom they reached is an intending purchaser and is thereby reasonably induced to purchase and pay for such land, or some of it, then the estoppel would apply, although it might turn out that the party making such statements acted under a mistake as to the truth of the matter." We think that under the facts of the case the charge was a correct statement of the law. The assignment is overruled.

The plaintiff requested and the court refused to give the following

special charge: "That before you can find for the defendants on the issue of estoppel, you must believe from the evidence, by a preponderance thereof, that C. Bender made the statements testified to by the witnesses McWilliams and Bryan; and further that same were communicated to the defendant R. E. Brooks, and that such statements were made by C. Bender with knowledge of the facts concerning his rights; (2) R. E. Brooks must have been ignorant of the truth of the matter concerning which said statements were made; (3) said statements must have been made with the intention upon the part of C. Bender that R. E. Brooks should act upon them; and (4) the said R. E. Brooks must have been induced by such statements to act upon them to his injury; and unless you so believe, you will find against the defendants on the issue of estoppel." The refusal of the court to give this charge is made the basis of appellants' thirty-first assignment.

We think the charge is wrong in two important particulars; first, it contains the instruction that the statements made to Mrs. Bryan and McWiliams, in order to create an estoppel, must have been made by Bender with knowledge of the facts concerning his rights, and second, that such statements must have been made with the intention that Brooks should act upon them. Ordinarily the rule is that the truth concerning material facts represented must be known to the party at the time when his conduct relied upon to create the estoppel takes place, or else the circumstances must be such that a knowledge of the truth is necessarily imputed to him. This last was omitted from the requested charge. But the rule that an actual knowledge of the truth is indispensable is not universal. It applies in full force only in cases where the conduct creating the estoppel consists of silence or acquiescence. It does not apply where the party sought to be estopped, although ignorant or mistaken as to the real facts, was in such position that he ought to have known them, so that knowledge will be imputed to him. In such case ignorance or mistake will not prevent an estoppel. Nor does the rule apply to a party who has not simply acquiesced, but whose affirmative acts and words have thus misled another; nor does it apply in cases of mere acquiescence when the ignorance of the real facts was occasioned by culpable negligence. 2 Pom. Eq. Jur., sec. 809; Weinstein v. Natl. Bank of Jefferson, 69 Texas, 38.

The second particular in which the requested instruction was wrong was that the statement must have been made with the intention on the part of Bender that Brooks should act upon them, as elsewhere referred to in this opinion. The assignment is overruled.

For the reasons last above stated the court did not err in refusing to give the thirty-sixth special charge asked by plaintiff and intervener, and their thirty-second assignment raising the point is overruled.

It was not error to refuse the second special charge asked by plaintiff and intervener. There was no evidence to warrant a charge based upon the theory that Brooks or his attorneys sent McWilliams or Mrs. Bryan to Bender to procure the quitclaim deed. This answers also appellants' thirty-seventh and thirty-eighth assignments which,

for the reason that there was no evidence to warrant the charges there referred to, are overruled. We think, however, that the fifth and twelfth special charges, requested by the same parties, were in the main correct and that the substance of .the same should have been given.

The thirty-fifth assignment, in so far as it is based upon the refusal to give special charge No. 2, is overruled, but sustained as to the refusal to give the fifth and twelfth.

The forty-fourth assignment complains of that part of the court's general charge which instructed in effect that defendant, W. R. Sharp, did not claim any interest in the land in controversy and that in no event could the jury find against him. Sharp was sued for the land, and answered by general denial and plea of not guilty. In the absence of a disclaimer by him and upon his failure to show title to the land the court should have instructed the jury to find for plaintiffs for the land as against him, in the event they showed title in themselves.

The other assignments of error presented by appellants which have not been specifically passed upon herein have been examined by us and found to point out no reversible errors.

We come now to a consideration of the cross-assignments of error, and the independent propositions presented by appellees.

The first cross-assignment is that "The lower court erred in its general charge in instructing and charging the jury that the intervener had title to the land sued for, instead of charging, as a matter of law, upon the undisputed facts that the title was in the defendants."

We do not think the court committed error in this regard. It would serve no useful purpose, we think, to set out at length the evidence introduced on the issue of title, or to discuss the legal principles involved, but it is sufficient to refer to the very satisfactory opinion of Associate Justice Neal in Mason v. Bender, 97 S. W., 715, and to say that the conclusions there reached appear to be sound, and are adopted by us as our conclusions in disposing of the above cross-assignment, which is overruled.

We can not agree with appellees that upon the undisputed facts relating to the issue of estoppel the verdict must, as a matter of law, have been for the defendants. While pretermitting a discussion of the evidence introduced, we think it sufficient to say, in our opinion, it raised the issue, but was not such as to compel a finding for appellees.

Appellees' second cross-assignment relates to the measure of damages. This assignment is disposed of by the answer of the Supreme Court to the question certified by us, and we need do no more than refer to the rule there given as to the correct measure of damages in this case. 103 Texas, 329.

*Reversed and remanded.*