RAGLEY-McWILLIAMS LUMBER COMPANY ET AL. v. A. R. HARE ET AL.

Decided June 10, 1910.

**1.—Pedigree—Evidence.**

In an action of trespass to try title, the issue being whether or not an infant daughter died before or after her father, evidence consisting of testimony of witnesses and entries in a family bible and photographs of such entries, considered and held sufficient to support a finding by the trial court that the infant died after its father.

**2.—Evidence—Family Bible—Births and Deaths.**

Testimony of a witness as to the ancient appearance of a family bible, and the record of births and deaths contained therein, considered and held not subject to the objections that the testimony of the witness was not the best evidence; that no sufficient predicate had been laid for the introduction of secondary evidence; that it was not shown by competent and legal testimony that the photographic copies of said records were photographs from the particular bible in question then in the possession of a member of the family; and that it was not shown that said photographs were exact reproductions of said records.

**3.—Trial Without Jury—Admission of Incompetent Evidence—Practice.**

When a cause is tried by a court without a jury, the admission of irrelevant or incompetent evidence will not require a reversal of the judgment if there is sufficient unobjectionable evidence in the record to support the judgment.

**4.—Estoppel—False Statement—Intention.**

It is an essential element of estoppel that a false statement must be made with the intention that it should be acted on by another, or there must be a reasonable expectation that it would be acted on. This rule applied in the case of an alleged false statement made by a claimant of land many years before as to the number of children surviving a former owner, the husband of declarant, and held not sufficient to raise the issue of estoppel.

**5.—Trial—Findings by Judge—Statute.**

It is only necessary that a trial judge file his findings of fact and conclusions of law upon the material issues in the case. He is not required to file a statement of the evidence. A failure to find a fact shown by the undisputed evidence can not be prejudicial to an appellant.

Appeal from the District Court of Sabine County. Tried below before Hon. W. B. Powell.

*Goodrich & Synnott,* for appellant.

*W. D. Gordon,* for appellees.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by the appellees, A. R. Hare and W. D. Gordon, against Ragley-McWilliams Lumber Company, a corporation, to recover the title and possession of the northwest one-fourth of the A. E. C. Johnson league of land in Sabine County. The defendant answered by general demurrer and plea of not guilty, and further pleaded that a tract of 726½ acres of the land in controversy had been conveyed to defendant by W. S. Blount and R. E. and Annie E. Colgin by warranty deed, and prayed that said parties be made defendants, and in event plaintiffs recovered any portion of said tract, that said defendant have judgment against its said warrantors for the purchase money paid by it for the land so recovered by plaintiffs. W. C. Arnold intervened in the suit and asserted title to an undivided one-half of the 726½ acres claimed by defendant.

The trial in the court below, without a jury, resulted in a judgment in favor of plaintiffs for one-half of said 726½ acres, against intervener on his claim for one-half interest in said tract, and in favor of defendant against its warrantors, Blount and Colgin, for the sum of $1,453.25, with interest thereon from August 12, 1902, same being one-half of the purchase money paid by defendants for said land. From this judgment the defendant Lumber Company prosecutes this appeal.

The facts are these: Allison A. Lewis is the common source of the title asserted by plaintiffs and defendant. Lewis died on May 2, 1842. He left surviving him two children, Allison A. Lewis, Jr., and Mary Boyd Lewis, and a wife, Martha Boyd Lewis, afterwards Campbell. On August 12, 1902, Annie E. Colgin, joined by her husband, R. E.

Colgin, and by W. S. Blount, conveyed the 726½ acres of land in controversy to defendant by warranty deed. Annie E. Colgin inherited the title and interest of Allison A. Lewis, Jr., in said land. Mary Boyd Lewis died in September, 1842, and her interest in the land, under the law then in force, passed to her mother, Martha Boyd Lewis, who subsequently married S. B. Campbell. Upon the death of Mrs. Campbell her interest in the land passed to her daughter, Martha Dale Campbell, the wife of L. B. Finch.

Plaintiffs hold the title and interest of Mrs. Finch. The deed from Mrs. Finch and husband, under which plaintiffs claim, was executed on March 23, 1906. On December 9, 1881, Martha Boyd Campbell, the immediate predecessor in title of 'Mrs. Finch, joined by her husband, S. B. Campbell, executed a power of attorney to S. M. Johnson, John H. Broocks and I. D. Polk, authorizing said donees to sue for and recover any lands in Texas to which Mrs. Campbell might be entitled as an heir of Allison A. Lewis, and in consideration of the expenses incurred and services performed and to be performed by said Johnson, Broocks and Polk, conveying to them an undivided one-half of any land recovered by them under said power of attorney. Johnson, Broocks and Polk conveyed to the intervener W. C. Arnold, an undivided one-half of the 726½ acre tract in controversy. This conveyance was made some time after this suit was filed. The undisputed evidence shows that Johnson, Broocks and Polk incurred no expense and did nothing under this power of attorney towards recovering the land in controversy for their donors, and therefore acquired no interest in the land.

The only material issue of fact presented by the record is whether Mary Boyd Lewis died before or after the death of her father. Upon this issue Mrs. Finch, who testified by deposition, makes the following statements:

"Witness is 48 years old, is a daughter of Martha Boyd Campbell and the wife of L. B. Finch. Mrs. Campbell died June 5, 1898, and witness was her only surviving child. Her mother was first married to Allison A. Lewis. Witness now has in her possession her mother's family bible, and the family record kept in this bible shows that her mother's first husband, Allison A. Lewis, died May 2, 1842; that Allison A. Lewis, Jr., was born May 30, 1840, and died May 19, 1871. Mary Boyd Lewis was born October 30, 1841, and died September 28, 1842. This bible record also shows the date of Mrs. Campbell's marriage to S. B. Campbell, and also the dates of the death of her father, Thomas Humphries, and of her daughter, Rosanna B. Campbell. A short time before the sale of the land to plaintiffs, witness loaned this bible to H. P. Weir, who acted as her attorney in fact in making the sale of the land, for the purpose of having the record entries therein photographed, and it was returned to her three or four months thereafter and was in the same condition when returned as when she let Weir have it. That she could not say whether her mother made any of the entries in this bible, but that they were not recent, and that she had been acquainted with them since her earliest childhood and no change had been made in them; that she did not know whether they had ever been photographed, but that she had never had any photo-

graphs made of them; that the entries of the dates of the death of A. A. Lewis, Jr., and A. A. Lewis, Sr., and of the date of the birth and death of Mary Boyd Lewis appeared to be made about the time of the dates given; that her knowledge of the entries made in this bible before her recollection, was obtained from the family bible record, and that those made since, from her own personal knowledge; that she did not know whether any photographs of this record had ever been taken, since she had never seen any such."

"W. D. Gordon, one of the plaintiffs, testified that before he purchased an interest in the land, H. P. Weir brought to him a purported family bible from which, at his instance, he had a photographer to make the photographs which are sent up with the record in this case; that these photographs were not quite broad enough to cover all the page of the family record which they represented, but in so far as they appeared, they were exact reproductions of the original which he had in his possession, and which he had received from Mr. Weir; that when he had finished having the photographs made he expressed the book to L. B. Finch, at Mexia, and received some kind of acknowledgment of it from him; that Weir was the man from whom he received the bible; that the photographs were taken under his personal supervision and direction, and that he knew nothing about the bible except what Weir told him and from its appearance, and except one or two letters which he had received from Mr. Finch about it; that when Weir brought him the bible he told him about it, and that was all he knew at that time; that he knew in a general way about Weir's land deal, and that Weir was not related with him in this transaction, but was interested with him in one or two tracts, or had been; that he had perhaps bought three or four tracts of land from Weir; that he did not know that Weir was regarded as a land man; that he personally inspected the bible which he had had the protographs made of before and after the photographs were taken; that on Friday preceding the call of this case for trial on Thursday, he had asked Mr. Finch over the phone for the use of this bible in evidence, and that Mr. Finch told him that his wife had already testified about the bible, and that had been advised not to part with it any more, and did not feel like letting him have it; that previously he had sought the use of the bible through a Mr. White, and that Finch and his wife had declined to part with it; that the bible from which he had the photographs taken was a very large, old styled book, and had records in it indicating that it was over one hundred years old; that all the leaves he looked at were brown with age, and about the middle of it were pages of births, deaths and marriages; that these pages were very brown with age, and the paper of a heavy quality like old style paper; that from appearance the writing was very ancient, down to recent date; that with the exception of the later entries, the writing was in brown ink or ink that had turned brown with age; some of it was very dim, but the most of it was legible; that the photographs taken were exact copies except one or two which did not cover all the page, and that he knew this, because he examined the original; that as to the book about which Mrs. Finch testified that she has sent to Mr. Weir, he knew was the book that he had obtained from Weir, because it answered the precise de-

scription, and because that he had sent it back to Mr. Finch and had received from him his receipt for it."

The photographs mentioned by the witness Gordon were introduced in evidence and the bible record thus reproduced corresponds exactly with the record described by Mrs. Finch, except that the year in which Mary Boyd Lewis died is not shown distinctly. Her birth is shown on October 30, 1841, and her death September 28th, but the figures showing the years are so indistinct that they can not be read. The fact that the year of her death is not shown is, however, immaterial. She was born in October, 1841, and if she died in the month of September of any year she necessarily outlived her father, whose death occurred May 2, 1842.

The only evidence which tends to show that Mary Boyd Lewis died before her father is the following:

"Mrs. Colgin testified that she was 60 years old; that her first husband was Allison A. Lewis, Jr., to whom she was married on January 9, 1866; that she was intimately acquainted with Mrs. Campbell, who was her mother-in-law, and during the year 1866 lived in the same house with her; that during the time she so lived with her she had many conversations with Mrs. Campbell, and her husband, Allison A. Lewis, Jr., with respect to the children of A. A. Lewis, Sr., who survived his death, and never at any time did either of them mention any other survivors than A. A. Lewis, Jr.; that she understood through numerous conversations had with Mrs. Campbell and her former husband that a girl child was born to A. A. Lewis, Sr. and his wife, and that said infant was born dead, or died shortly after birth; that she never saw any bible or any record kept by Mrs. Campbell showing births and deaths of any of the members of her family; that if such bible record had been kept, witness would have known of its existence during the eight months in which she had lived with Mrs. Campbell, and that it had not been intimated to witness that a daughter survived A. A. Lewis, Sr., until very recently; that she did not know that such a thing was true, but that she did not believe that such was true; that it was a fact that witness can not remember the dates of the births and deaths of A. A. Lewis, Sr. and his daughter, Mary Boyd Lewis, from what some one told her years ago."

W. S. Blount testified for the defendant that he represented the plaintiffs in a suit in the District Court of Montague County styled Mary L. Dunn et al. v. A. D. Melton et al. This suit was brought to recover a league of land in said county granted to Abel A. Lewis, the father of Allison A. Lewis, Sr. In this suit witness represented the plaintiffs who sued as heirs of Abel A. Lewis. An agreed judgment was rendered in this suit in 1887. While this suit was pending witness propounded interrogatories therein to T. W. Wade, Martha Boyd Campbell and A. M. Boyd, for the purpose of proving the heirship of the plaintiffs. In No. 4 of the interrogatories propounded to Mrs. Campbell she was asked to give the place and date of the death of Allison A. Lewis, Sr., and to state whether he left a child or children surviving him. She is then asked the following:

"Inty. No. 5. If you state in interrogatory 4 that he left only one

child surviving him, then state if he had any other children who died preceding him, and left issue? If so, who?

"Inty. No. 6. If you state that said Allison A. Lewis left surviving him only one child, then state what was the name of said child, and what was his age at the time of his father's death?

"Inty. No. 7. If you state that there was only one child, and that his name was also Allison A. Lewis, then state whether said child, Allison A. No. 2, ever married, and if so, where, when and whom did he marry, and is he living or dead, and if dead, when and where did he die?"

Witness' recollection is that the deposition of Mrs. Campbell was taken, and in answer to the above interrogatories she stated that the only child of Allison A. Lewis, Sr. that survived him was his son, Allison A. Lewis, Jr. Witness also received a letter from Mrs. Campbell during the pendency of said suit in which she explained to him how Mrs. Colgin, who was the wife of Allison A. Lewis, Jr., had succeeded to the interest of said Lewis in the estate of his father by inheritance from a child of herself and said Lewis who died after the death of its father. In subsequently procuring a power of attorney from Mrs. Colgin and in joining her in the conveyance of the land in controversy witness relied upon the statements made by Mrs. Campbell in her depositions taken in the case of Dunn v. Melton, and in the letter before referred to, and fully believed that Allison A. Lewis, Jr. was the only surviving child and sole heir of Allison A. Lewis, Sr.

W. S. Jamerson testified for the defendant that he had had occasion, as a lawyer, after the rendition of the judgment in the suit of Dunn v. Melton, to examine the record in said cause for the purpose of ascertaining the respective interests of the plaintiffs therein in the land involved in said suit; "that the depositions of Mrs. Campbell were with the papers in said cause when he first examined the record, which was shortly after the rendition of the judgment in 1887; that he had recently examined the papers in the case of Dunn v. Campbell, and had found the interrogatories propounded to her and Wade and Boyd; that he was quite certain that Mrs. Campbell's depositions were taken to these interrogatories and that they were at one time among the filed papers in this case; that her answers to these interrogatories so propounded to her in this case were among the filed papers many years after the case was disposed of, but that such depositions could not be found now, and that he had recently, with the assistance of the district clerk, made diligent search for them, but that they were not in the clerk's office; that he had read the interrogatories Nos. 4, 5, 6 and 7, propounded to Mrs. Campbell which are now on file among these papers, and that the depositions of Mrs. Campbell in answer to these interrogatories which were once among the papers in this case were responsive to the questions asked, and that her answers to the interrogatories were, substantially, that her first husband, Allison A. Lewis, was a son of Abel A. Lewis, and that the said Allison A. Lewis, when he died, left only one child, which was her son Allison A. Lewis, and that her son died and left a widow and one child, which died young, and that the widow had remarried."

J. I. Raglin, the clerk of the District Court for Montague County,

testified that the interrogatories propounded to Wade, Boyd and Mrs. Campbell in the case of Dunn v. Melton are on file with the papers of said cause, but no deposition or answers of these witnesses are with said papers, and that he has often looked for said depositions and never been able to find them. No commission, nor any record of the issuance of a commission, to take said depositions, is shown.

We think this evidence is amply sufficient to sustain the fact conclusion before stated, that Mary Boyd Lewis died after the death of her father, and appellants' several assignments of error which attack this finding by the trial court and the conclusion of law based thereon, on the ground that such finding is against the great preponderance of the evidence, can not be sustained.

The first assignment of error complains of the ruling of the court in permitting the witness Gordon to testify as to the appearance of the bible and the family record therein which was delivered to him by Mr. Weir, and to introduce in evidence in connection with his testimony photographic copies of said record. The objections made to this evidence were that it was not the best evidence and no sufficient predicate had been laid for the introduction of secondary evidence as to the appearance of said bible and as to what was contained in the record kept therein; and further, because it was not shown by any competent and legal testimony that the photographic copies introduced in evidence were photographs taken from any record contained in the bible testified about by Mrs. Finch, and because it was not shown that the photographs were exact reproductions of the record mentioned in the testimony of Mrs. Finch.

The trial court did not err in admitting this evidence over these objections. The testimony before set out unmistakably identifies the bible described by the witness Gordon as the one referred to in the testimony of Mrs. Finch and shown by her to have been the family bible of her mother, Mrs. Campbell. Mrs. Finch testified that she loaned this bible to Weir for the purpose of having photographs made of the family record contained therein. She further testified as to what this record contained, and the testimony of Gordon and the photographs exhibited by him, and which he swears are correct photographs of the record contained in the bible delivered to him by Weir, show conclusively that this bible was the family bible of Mrs. Finch's mother about which she testified. Plaintiffs having shown that they had tried to procure the bible as evidence and were unable to obtain it, secondary evidence of its contents was admissible. The trial not being with a jury, if this evidence should be held inadmissible, such holding would not require a reversal of the judgment. Mrs. Finch's testimony, which was not objected to, is amply sufficient to sustain the finding of the trial court, and it is a settled rule of decision in this State that when a cause is tried by a court without a jury the admission of irrelevant or incompetent evidence will not require a reversal of the judgment if there is sufficient unobjectionable evidence in the record to support the judgment. Gillis v. Rosenheimer, 64 Texas, 246.

There is no merit in the third assignment, which complains of the finding by the trial court that when Blount first became interested in the Lewis title neither he nor Mrs. Campbell knew that under the law

in force at the death of Mary Boyd Lewis (Act of March 17, 1842), her entire interest in her father's estate passed to her mother. Mr. Blount admitted that he did not know that such was the law, but there is no evidence as to Mrs. Campbell's knowledge on this subject. The finding, however, is wholly immaterial, because the evidence does not raise the issue of estoppel. The trial court states in his conclusions of fact that he is "unable to find from the evidence that Mrs. Campbell ever made a false statement of facts as to the birth and death of the children of Allison A. Lewis, Sr., her first husband, and herself, to any person at any time." The evidence upon this issue before set out is sufficient to sustain the finding that Mrs. Campbell did not testify in the case of Dunn v. Melton as claimed by the defendants, and if this is true there is no evidence that she ever made any false or erroneous statement as to the date of the death of Mary Boyd Lewis.

If she did testify in that case, as claimed by defendants, that the only child of Allison A. Lewis, Sr. that survived him was his son, Allison A. Lewis, Jr., such testimony should not be held to estop her or those claiming under her from now asserting, against Blount and his vendees, title to the land in controversy in this suit by inheritance from a daughter of Allison A. Lewis, Sr., who survived her father. In the suit of Dunn v. Melton, which was disposed of twenty years before Blount asserted any right in the land in controversy in this suit, a different title and different tract of land was involved. If the false statement was made as claimed by defendants there is nothing in the evidence to indicate that such statement was made with the intention that it would be acted upon by any one contemplating purchasing the land in controversy, and there could have been no reasonable expectation on the part of Mrs. Campbell that it would be so acted upon. This essential element of estoppel being wanting, the issue is not raised. 2 Pom. Eq. Jur., 804; Bender v. Brooks, recently decided by this court (130 S. W., 653).

The last assignment of error presented in appellants' brief complains of the failure of the trial judge to file findings of facts and conclusions of law in accordance with the written motion for such findings and conclusions filed by the defendants. In response to defendants' motion the trial judge filed his findings of fact and conclusions of law upon all of the material issues in the case. This was sufficient. He was not required to file a statement of the evidence adduced on the trial, nor could his failure to find a fact shown by the undisputed evidence be prejudicial to appellants. All that the statute requires is that he give his conclusions upon the material issues raised by the evidence.

After due consideration of each of the assignments of error, we are of opinion that none of them should be sustained and that the judgment of the court below should be affirmed.

*Affirmed.*